

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Orville S. Carpenter
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:

Opinion No. O-1924

Re: Liability of Kirby Lumber
Corporation for taxes due
prior April 1, 1939, based
on payments to legging con-
tractors and to individuals
engaged by such contractors.

We have your request for an opinion of this Department
as to the liability for unemployment taxes predicated upon
amounts paid by Kirby Lumber Corporation to certain logging
contractors and individuals engaged by them. You have forwarded
with your request certain data purporting to present the facts
and upon this data we base our opinion.

Presented for our determination are certain facts to be
applied to the definition of "Employment" found in Article 5221-b,
Section 17 (G) (N of Vernon's Civil Statutes, 1925, prior to
its amendment April 1, 1939, and found in Section 19 (g) (5) (A),
(B) and (S) of the Texas Unemployment Compensation Commission's
compliation of the Act, which reads as follows:

"(5) Services performed by an individual for wages
shall be deemed to be employment subject to this Act
unless and until it is shown to the satisfaction of the
Commission that:-

"(A) Such individual has been and will continue to
be free from control or direction over the performance
of such services, both under his contract of service
and in fact; and

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Orville S. Carpenter, page 2

"(B) such service is either outside the usual
course of the business for which such service is per-
formed or that such service is performed outside of all
the places of business of the enterprise for which such
service is performed; and

"(C) such individual is customarily engaged in an
independently established, trade, occupation, profes-
sion, or business."

The information accompanying your request reveals a de-
tailed statement of facts submitted by your Auditor. You also
submitted statements and affidavits prepared and executed by
officials of Kirby Lumber Corporation and by certain of the log-
ging contractors. You asked that determination of liability be
based upon all of the data submitted. The conclusion of your
Auditor's report states that "when sworn testimony is taken it
will support a finding that the individuals under consideration
are under the supervision and control of Kirby Lumber Corporation,
thus are in their 'Employment'". No hearing was had in this
instance.

The statements conflict in certain instances, however, in
instances where there is doubt in our mind, we find affidavits
made by and on behalf of the Kirby Lumber Corporation to support
their representation of facts. This, we think, entitles them
to more credence than indirect information or conclusions. The
Bureau of Internal Revenue had this same information and relied
upon it in their ruling of July 21, 1939. That ruling was that
the individuals in this factual situation were not employees
for the purpose of taxes under Titles VIII and IX of the Social
Security Act.

A review of the data submitted discloses that two of
the contractors mentioned in your auditor's report have made
affidavits regarding their contract and relationship with the
Kirby Lumber Corporation.

The work of cutting timber into logs requires a certain
degree of skill; if the work is not handled in the proper manner
there is an unnecessary amount of waste. It appears from the
contract forms and statements that the contractors in question
contract to produce the result of cutting the trees into logs
in accordance with the specifications of the corporation and to
promptly deliver them at designated places. Such contractors
use their own means, methods and equipment, and employ their
own help to perform such work without any attempt by the corpora-
tion to control the details of their work. The contractors

Hon. Orville S. Carpenter, page 3

purchase and own all of the appliances, such as saws, axes, logging trucks, tractors, loaders, and other equipment for doing the work. The corporation does not now, and never has, owned any log trucks to do its logging. The remuneration of the logging contractors is determined upon a quantitative basis, in accordance with the rates set out in the contracts between the corporation and the contractor.

The affidavit of one Oscar Baker, dated October 20, 1938, one of the contractors in question, recites that he bought his own equipment and the Kirby Lumber Corporation has no claim thereto; that he maintains his own camp facilities for his logging crew; that he operates on his own credit; that he employed mechanics and others to maintain his equipment and he pays all of the bills for such repair. Mr. Baker also had done work for other individuals but at the present time has sufficient work with the Kirby Lumber Corporation to keep his crew and all of his equipment busy, but there is no obligation on his part to contract exclusively with this corporation. This individual has been assigned an employer's identification number under the Social Security Act and under the Employment Compensation Act of Texas. The affidavit further certifies that the corporation does not exercise any degree of control over Mr. Baker's employees by indicating the employees to be hired or discharged, or to designate the hours of work. The names of his employees are not furnished to the corporation. The books and records of his business are kept by one of his employees whose affidavit as to the correctness of Mr. Baker's statement is also in evidence.

Mr. L. F. McClanahan also one of the logging contractors executed an affidavit under date of October 19, 1938, stating that he had done business with the Kirby Lumber Corporation, its receiver, and its trustee and had made contracts from time to time with reference to logging on different tracts with the Kirby Lumber Company.

Mr. McClanahan states that in the operation of these logging contracts he directs the details of the work and receives from the Kirby Lumber Corporation only the specifications with which he is to comply. He states that the Kirby Lumber Corporation nor its agent had any control over the details of his work; that he owns his own trucks, hires and discharges his own employees, does his own financing, and merely contracts to do the ultimate job as set out in the contract he is then performing. The affiant further states that, from time to time, he contracts with other individuals, and, at the present time, he has contracts with

Hon. Orville S. Carpenter, page 4


several other companies; that he carries his own workmen's compensation insurance with the Texas Employer's Insurance Association. Mr. McClanahan states that he is an employer under the Federal Law and is endeavoring to pay all taxes upon employees under both the Federal and State Laws.

The information supplied by Messrs. Baker and McClanahan is certified to by affidavits of other persons familiar with the operation of these two men. If there be other contractors or persons representing themselves as contractors with the Kirby Lumber Corporation whose relationship with that corporation is different from the relationship of Messrs. Baker and McClanahan, we have no detailed information about them. We, therefore, take the statements of these two men and the copies of contracts existing between them and Kirby Lumber Corporation as being representative of the relationship of the Kirby Lumber Corporation and the individuals doing the logging work.

Other information submitted discloses that there is some merit to your Auditor's statement that the Kirby Lumber Corporation requires that the logging contractor carry his workmen's compensation insurance with a company of its approval. A portion of paragraph IX of the contract of February 1, 1936, executed by and between Oscar Baker and the Kirby Lumber Corporation provides that "should circumstances make it necessary, in the judgment of the undersigned, to discontinue your operation, cutting must be stopped immediately following receipt of notice from the undersigned. . ."

This section of the contract indicates that the company may stop the work of the person doing the contracting at any time that it, in its judgment, thinks best. We anticipate a construction of this portion of the contract by some to be a rather broad exercise of power over one whose relationship is that of an independent contractor.

There is other information at hand that a saw - foreman of Kirby's choice is sometimes placed with the crews without the contractor's consent. An attempt is made to explain this by reason of the nature of the work. The timber being cut is, in many instances, on land owned in fee by the Kirby Lumber Corporation, and, in other instances, on land leased by this corporation, and, by having an experienced man to pick out the trees to be cut and marking them for the convenience of the contractors and their crews, much waste is eliminated. This is known as selective cutting and has the additional advantage of giving the smaller timber additional time to mature.

Hon. Orville S. Carpenter, page 5

We come now to the test to be applied to the facts at hand. In an opinion by this Department under date of January 24, 1940, to Orville Carpenter, # O-1290, we adopted the common law test of independent contractor as a basis for determination of liability. We think that test equally fitting here, and we will not depart from it.

The definition of an independent contractor generally used by our courts and quoted in Lone Star Ges Company vs. Kelly, 46 S. W. (2d) 656, is as follows:

"As defined by the authorities, an independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work. 14 R.C.L. p. 67, par. 2."

The editors of the Restatement of the Law of Agency have listed a number of tests to be used in determining the true relationship between an alleged principal and independent contractor. They are enumerated in that work in Volume 1, § 220, pages 483-485, as follows:

"(1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

Hon. Orville S. Carpenter, page 6

"(e) whether the employer or the workman supplies
the instrumentalities, tools, and the place of work
for the person doing the work;

"(f) the length of time for which the person is
employed;

"(g) the method of payment, whether by the time or
by the job;

"(h) whether or not the work is a part of the
regular business of the employer; and

"(i) whether or not the parties believe they are
creating the relationship of master and servant."

The case of Washington Record Pub. Co., vs. Ernest, 91
Pac. (2d) 718, bears the closest resemblance to our facts. It
has the same definition before it that we have; it has facts
that, in some respects, indicate control by the party of the
first part, as do we; however, we think the facts in that case
evidence a greater degree of control over the workers than is
present here, nevertheless the court held there was no liability
for taxes. We chose the above case for the additional reason
that they were construing an unemployment compensation law and
not a question of tort liability.

Manifestly, a comparison of all our facts-with each test
supplied by the Restatement of the Law of Agency would be onerous
to both this Department and the reader. A resume of the overt
facts indicate that the so-called contractors hire employees of
their choice, fire them at their own election; that they alone
keep payroll records; that they furnish all equipment and its
repair; that they set the hours for work; that they choose their
own method of cutting; that they are answerable to the Kirby
Lumber Corporation only in respect to delivery of a specified
amount of timber at the agreed time, and that they are paid on
a job basis.

Referring again to (g) (5) (A) of the definition of
services to determine whether these individuals are free from
control under the contract and in fact. We think they are. The
preponderance of the data before us evinces a clear intention
and understanding between the Kirby Lumber Corporation and con-
tractor that a contractor relationship is intended. Sufficient
evidence of exercise of company control of the method of doing
the work is not before us.

Hon. Orville S. Carpenter, page 7

Section (g) (5) (B) of our definition requiring that the service is outside the usual course of the business for which such service is performed or that the service is performed outside of the places of business of Kirby Lumber Corporation offers no difficulty. The information submitted by Kirby Lumber Corporation attempts to establish the "logging contracting" as a distinct business outside of the course of milling and selling lumber. Whether that be true, the facts show that some of the work is done on property of Kirby Lumber Corporation and other work done off their fee. We think the opinion of Justice Millard of the Supreme Court of Washington in the heretofore cited case of Washington Recorder Publishing Co. v. Ernst, conclusive on this point. The performance of some work on the premises of Kirby Lumber Corporation does not change the status of a contractor to that of a servant.

The last section of the definition of service, (g) (5) (C) that we must satisfy is whether the individual is customarily engaged in an independently established trade, occupation or business. As said in the Washington Recorder Pub. Co. case, "if he never serves more than one person there is usually a presumption that he has no independent occupation; but this presumption is not conclusive . . . the one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work and have the right to control the mode and manner of doing it."

In our factual situation both Baker and McClanahan are permitted to contract with firms of their choice, and at the time of his affidavit, McClanahan was doing so. We presume other individuals contracting with Kirby Lumber Corporation enjoyed the same privilege. The facts establish that they were customarily engaged in an independently established business.

Finally, we will dispose of the two facts heretofore mentioned as evidencing a control indicating a servant relationship. First, the power of Kirby Lumber Corporation to terminate logging at will; second, the choice by Kirby Lumber Corporation of the logs to be cut. Such were the facts in the case of Crosby Lumber Mfg. Co. v. Durham, 179 So. 285, wherein the court said:

"The power given an employer under a contract for services to terminate it at will is a fact for consideration in determining whether the contract creates the relation of master and servant, but, of itself alone, is not determinative, and the mere fact that what logs Stockstill should haul were for the deter-

57

mination of Crosby Lumber & Manufacturing Company
did not constitute such control over him as to make
the relation between them that of master and servant."

That is our answer to the proposition here.

You are, therefore, advised that only upon the basis of the
facts before us the individuals doing the logging work were, prior
to April 1, 1939, independent contractors, and there is no liability
on Kirby Lumber Corporation for taxes based upon amounts paid to
those persons.

If the facts are other than represented in the information
before us, we do not pass upon the liability of Kirby Lumber
Corporation or any other employer for taxes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Morris Hodges*
   Morris Hodges
    Assistant

MH:N  APPROVED MAR 12, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN